UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

SHERIMA BELL et al.,                    Criminal No. JKB-16-485

Defendants.

## EMERGENCY MOTION TO ENFORCE ORDER AND/OR
## TO MODIFY JUDGMENT AND GRANT IMMEDIATE RELEASE

The Defendant, Erica Cook, respectfully requests that the Court order the U.S. Bureau of Prisons ("BOP") to comply with the emergency order issued in this case on March 20, 2020, or in the alternative, to modify Ms. Cook's judgment to time served.

## BACKGROUND

Almost a week ago, this Court granted Ms. Cook's emergency motion for immediate release from Volunteers of America Residential Re-Entry Center ("VOA") in Baltimore, Maryland.  ECF 1727 (ordering Ms. Cook's immediate release based on "the reasons stated in" the emergency motion).  Ms. Cook's unopposed motion argued that the COVID-19 pandemic and the unsafe conditions maintained by VOA posed an unreasonable risk to the health and safety of its residents, including Ms. Cook.  *See generally* ECF 1726.  The Court granted the motion and ordered Ms. Cook to be "immediately released from Volunteers of America" and to be "immediately transferred to home confinement."  ECF 1727.  The U.S. Attorney's Office ("USAO") now belatedly injects itself into the matter by asking the Court to reconsider Ms. Cook's

1

motion and by opposing a similar motion brought by another VOA resident.  ECF 1730.[1]  Notably, the government has not disputed Ms. Cook's or any other resident's allegations that conditions at the VOA are unsafe and wholly inadequate.

Despite this Court's order, Ms. Cook remains at VOA, subject to the dangerous and deteriorating conditions.  Ms. Cook and her counsel have been engaged since last Friday evening in good faith attempts to work with the VOA administrators, as well as various offices of the BOP, to comply with the Court's emergency order.  These efforts have failed.  To date, the VOA administrators refuse to release Ms. Cook, and insist that they need authorization from BOP.  Just yesterday, VOA administrators held a townhall to inform residents that no one would be placed on home confinement, even pursuant to a court order, until they reached the eligibility dates calculated by BOP.  Further, Ms. Cook's counsel understands that VOA has been unable to release on time even those residents whose BOP-assigned release date has passed due to personnel issues caused by the COVID-19 crisis.  In sum, the government has so far failed to comply with the Court's order and appears ready to double down on its strategy of preventing the release of at-risk VOA residents.  *See, e.g.*, *Baez-Sanchez v. Barr*, 947 F.3d 1033, 1036 (7th Cir. 2020) ("[I]t should not be necessary to remind the Board . . . that the 'judicial Power' under Article III of the Constitution is one to make conclusive decisions, not subject to disapproval or revision by another branch of

---

[1] The government filed a motion for reconsideration of the Court's order on March 25, 2019 despite never previously taking a position on Ms. Cook's original motion—either through defense counsel or with the Court.  Rather than raise any concerns at the time, the government stayed silent and then failed to comply with the Court's order, allowing Ms. Cook to continue to be unreasonably exposed to the dangerous conditions at the VOA for several additional days.  Ms. Cook will respond to the government's motion for reconsideration, but none of the statutory arguments in that motion address the constitutional or other violations being committed by BOP through its delegation to VOA, an institution that is unfortunately incapable of protecting its residents in this dire period.

government . . . . Once we reached a conclusion, both the Constitution and the statute required the Board to implement it.").

The government's refusal to enforce the Court's order carries potentially grave medical consequences for Ms. Cook and other VOA residents.  The COVID-19 pandemic in the United States has only worsened in the last week since Ms. Cook's emergency motion was granted.  Yet VOA has not implemented any meaningful safeguards to address the risks faced by its residents and staff.  Nor has BOP stepped in to ensure that the VOA—an institution with which it contracts— is safeguarding its residents.  Instead of working to mitigate these obvious and undisputed risks— for example, by complying with the Court's emergency order to release Ms. Cook—the VOA, BOP, and USAO have circled the wagons to frustrate legitimate efforts by VOA residents to serve the remainder of their time in home confinement as opposed to a facility whose operation necessarily involves deviating from the guidance of CDC and other reputed governmental authorities.

Ms. Cook respectfully requests that the Court order BOP to immediately comply with its emergency order, including by completing any remaining administrative steps necessary to effectuate her release within 24 hours of a second court order pursuant to this motion.  In the alternative, the Court should amend Ms. Cook's final judgment and sentence to time served to effectuate her transfer to supervised release.

## **LEGAL STANDARD**

This Court has the authority to modify the conditions of a prisoner's confinement, or to modify a prisoner's final judgment to order immediate release, if he or she is being unreasonably exposed to the risk of physical or medical harm.

Federal courts have modified the conditions of confinement of prisoners pursuant to the U.S. Constitution's prohibition on cruel and unusual punishment.  "It is undisputed that the

treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *See Helling v. McKinney*, 509 U.S. 25, 31 (1993); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."). Prisons in the United States have a duty to provide for the "care," "safekeeping," and "protection" of all individuals within its jurisdiction. *See* 18 U.S.C. § 4042. Accordingly, courts have repeatedly recognized that the Eighth Amendment is violated where "deliberate indifference" on the part of an inmate's custodian leads to an "unreasonable risk of serious damage to [the inmate's] future health." *Helling*, 509 at 31; *see also Porter v. Clarke*, 923 F.3d 348, 368 (4th Cir. 2019), as amended (May 6, 2019) (enjoining prison system's solitary-confinement policy due to "substantial risk of serious psychological and emotional harm"). As the Supreme Court has emphasized, those risks include the risk of "exposure of inmates to a serious, communicable disease." *See Helling*, 509 U.S. at 33.

Additionally, federal courts also have broad authority under Federal Rule of Civil Procedure 60(b) to modify a final judgment. Federal Rule of Civil Procedure 60(b) sets forth six grounds justifying relief from a final judgment or order. Under the rule's catchall provision, the Court may relieve a party from a final judgment or order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Rule 60(b) vests wide discretion in courts," as long as "extraordinary circumstances" exist. *Buck v. Davis*, 137 S. Ct. 759, 777 (2017); *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) ("Courts are to dispense their broad powers under 60(b)(6) only in extraordinary

circumstances where, without such relief, an extreme and unexpected hardship would occur.")
(internal quotation omitted).

## **ARGUMENT**

The Court should enforce its emergency order and release Ms. Cook to home confinement to serve the remainder of her sentence.  Alternatively, the Court should modify Ms. Cook's sentence to time served and order her immediate release from BOP custody.  The Court has the authority to order that relief here.[2]

*First*, Ms. Cook's release to home confinement is appropriate under the Eighth Amendment.  As detailed in her emergency motion, ECF 1726, at VOA, Ms. Cook is exposed to an "unreasonable risk of serious damage to [her] future health."  *See Helling*, 509 U.S. at 31.  COVID-19 is undoubtedly a "serious, communicable disease."  *See id.* at 33.  Contrary to the guidance of CDC and other governmental and health authorities tasked with combatting the disease, the VOA forces residents to meet and eat in common areas in close quarters.  The VOA allows its staff and some of its residents to come and go during the day, some taking public transportation to and from places of employment or other programming.  Residents cannot isolate or protect themselves from others in the facility.  There is no medical staff on duty at VOA to test for COVID-19 or treat patients suffering from the disease.  Those facts on their own, in combination with a raging COVID-19 pandemic, would warrant transferring suitable residents to home confinement.  Again, the government does not contest the current conditions at VOA.

---

[2] For example, the Court has authority to order habeas relief under 28 U.S.C. § 2241, or a temporary restraining order under 18 U.S.C. § 3626, to provide the same relief requested in Ms. Cook's motion. However, given the exigent circumstances and threat to Ms. Cook's health here, form should not trump function, and Ms. Cook should not be forced to resort to time-intensive litigation with the government.

Even worse, VOA continues to operate business-as-usual despite that a few of its residents have exhibited symptoms consistent with COVID-19.  One resident was recently transported to the hospital by an ambulance because of such symptoms, and others have been coughing incessantly.  Indeed, in light of the Court's orders in Ms. Cook's case and in other cases involving VOA residents, one would think VOA (or even more importantly, BOP and the USAO) would have stepped in to implement safeguards consistent with CDC guidelines for residents in the past few days.  It has not.  Rather, nothing has changed, thereby only enhancing the need for Court intervention to protect endangered residents like Ms. Cook.

Even if Ms. Cook miraculously avoids contracting COVID-19, her continued residence in such a facility poses a "substantial risk of serious psychological and emotional harm" that likewise counsels in favor of her release.  *See Porter*, 923 F.3d at 368.  Indeed, although multiple VOA residents have shown symptoms consistent with the disease, the VOA has not even announced whether they were tested, much less whether they tested positive or negative.  Underscoring the VOA's disinterest in following governmental guidelines for social distancing, today VOA administrators apparently called the residents together in a common area for a townhall meeting to confirm that they would not release any resident to home confinement, despite court orders to the contrary, if the resident had not reached his or her BOP-calculated home confinement eligibility date.

In sum, the VOA and BOP have displayed the exact type of "deliberate indifference" to the health of inmates that justifies modifying the conditions of confinement under the Eighth Amendment.  *See Porter*, 923 F.3d at 361.  The Court's authority to rectify these constitutional violations overrides the government's request to honor BOP's status quo statutory authority.

*Second*, the Court has discretion to modify Ms. Cook's final judgment to time served under Rule 60(b), to effectuate her immediate release.[3] A court may consider a wide range of factors to determine whether "extraordinary circumstances" exist, including "the risk of injustice to the parties" or "the risk of undermining the public's confidence in the judicial process." *Buck*, 137 S. Ct. at 778 (citing *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863–864 (1988)).

Here, Ms. Cook will suffer manifest injustice and extreme hardship without the Court's intervention. The BOP will continue to detain Ms. Cook in unsafe conditions at VOA until at least April 22, 2020, when Ms. Cook will become eligible for home confinement under BOP's calculations. But based on the experience of other residents who have continued to be detained at VOA despite their eligibility for home confinement and receipt of release papers from BOP, there is no guarantee that BOP will transfer Ms. Cook expediently in April 2020. Whether Ms. Cook spends a month, a week, or even an additional day at VOA makes a significant difference to her chances of contracting COVID-19. It would be unconscionable to leave Ms. Cook detained at VOA while there is a simple alternative to confine her at home or to release her immediately. This alternative is even more reasonable here, where Ms. Cook has less than four months of her sentence left to serve, is due to be released to home confinement in less than a month, has a safe environment to return to that VOA has approved, and does not present a threat to the community.

The Court should exercise its broad authority under the Eighth Amendment and Rule 60 and order Ms. Cook's release from the VOA.

---

[3] Although some courts have declined to modify criminal sentences pursuant to Rule 60(b), *see McKinnon v. United States*, 2012 WL 727017, at *1 (D. Md. Mar. 5, 2012), the facts of Ms. Cook's case—including the conditions at the VOA, the global COVID-19 pandemic, and the government's refusal to enforce the emergency court order—are "extraordinary circumstances" that this Court can and should address.

## **CONCLUSION**

Ms. Cook respectfully requests that the Court enforce its emergency order, or in the alternative, that it modify Ms. Cook's judgment to time served. A proposed order detailing Ms. Cook's requests is attached.

Respectfully submitted,

Dated: March 26, 2020                          */s/ Brian L. Stekloff*

Brian L. Stekloff
Aleshadye Getachew
Hayter L. Whitman

WILKINSON WALSH LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 841-4000