UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SHERIMA BELL et al.,<br><br>Defendants. | Criminal No. JKB-16-485 |

**OPPOSITION TO GOVERNMENT'S MOTION TO RECONSIDER THE COURT'S ORDER GRANTING DEFENDANT'S EMERGENCY MOTION**

The Defendant, Erica Cook, respectfully requests that the Court deny the Government's Motion to Reconsider the Court's Order Granting Defendant's Emergency Motion for Immediate Transfer to Home Confinement ("Mot."). Instead, Ms. Cook respectfully requests that the Court grant the relief requested in her Emergency Motion to Enforce Order and/or to Modify Judgment and Grant Immediate Release (ECF No. 1731).

**ARGUMENT**

"Reconsideration of a judgment after its entry" is an "extraordinary remedy." *Morris v. Levene*, No. RDB-19-1351, 2020 WL 707193, at *2 (D. Md. Feb. 12, 2020). Indeed, Rule 59(e) motions are granted "in very narrow circumstances" including: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *See Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (internal quotations omitted). Here, the government's motion should be denied because Rule 59(e) motions may not be used to make arguments that could have been raised before the ruling. *See id.* Ms. Cook alerted the government twice before filing her emergency motion (ECF No. 1726) and received no response. And the government did not file anything on the docket after

1

the motion was filed before the Court ruled. Indeed, the government admits that it originally "deferred to the Court" on similar motions, *see* Mot. at 3, which is not a credible explanation for its failure to oppose Ms. Cook's emergency motion before the Court issued an Order. *See Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) ("[A] motion to reconsider is not a license to reargue the merits or present new evidence that was previously available to the movant.") (internal quotation omitted); Wright et al., Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995) ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment."). For this reason alone, the government's motion should be denied.

Even on the merits, the Court should reject the government's belated argument that the Court's emergency ruling constituted clear legal error. This Court may construe Ms. Cook's motion liberally because the alternative may preclude a decision on the merits of her claims. *See J & J Sports Prods., Inc. v. Mumford*, 2011 WL 1675223, at *1 (D. Md. May 3, 2011) ("liberally constru[ing]" motion in light of the Fourth Circuit's "strong policy that cases be decided on their merits"). As explained below, the Court did not commit any clear error of law because it *does* have the authority to order the emergency relief requested by Ms. Cook. In addition to the arguments below, Ms. Cook incorporates the arguments made in her Emergency Motion for Immediate Transfer to Home Confinement (ECF No. 1726), Emergency Motion to Enforce Order and/or Modify Judgment and Grant Immediate Release (ECF No. 1731), and Notice in Further Support of the Motion to Enforce Order and/or Modify Judgment and Grant Immediate Release (ECF No. 1733). At bottom, the Eighth Amendment and Ms. Cook's constitutional rights trump the statutory arguments made by the government. But even beyond the constitutional arguments asserted by Ms. Cook, the government's motion for reconsideration should be denied.

**I.     The Court Has Authority Under 28 U.S.C. §§ 2241 and 2255 to Release Ms. Cook from VOA.**

Courts have authority under 28 U.S.C. §§ 2241 and 2255 to remedy unconstitutional conditions of an inmate's confinement through granting a writ of habeas corpus. *See, e.g.*, *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014) (explaining that "one in custody may challenge the conditions of his confinement in a petition for habeas corpus"); *Leonard v. Hammond*, 804 F.2d 838, 840 (4th Cir. 1986) (holding that habeas corpus was proper avenue for people seeking to challenge the "constitutionality of their confinement"); *cf. Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."). And as courts have repeatedly recognized, the government violates the Eighth Amendment when it is deliberately indifferent to conditions of confinement that are "sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993) (inmate stated a claim for "deliberate indifference" to threat to his health posed by second-hand smoke generated by five-pack-a-day cellmate); *see also id.* at 33 ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms."); *Hutto v. Finney*, 437 U.S. 678, 682-83 (1978) (conditions of "punitive isolation" constituted cruel and unusual punishment because, among other things, "[a]lthough some prisoners suffered from infectious diseases such as hepatitis and venereal disease," their "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening").

3

The conditions at Volunteers of America ("VOA") Baltimore threaten Ms. Cook with the risk of exposure to a "serious communicable disease." *See Helling,* 509 U.S. at 33. VOA has demonstrated that it is wholly incapable of complying with mandates from health authorities like the Centers of Disease Control ("CDC") to stop the spread of COVID-19 by, for example, immediately implementing practices like social distancing and quarantine for suspected cases. Moreover, BOP's unwillingness to modify Ms. Cook's conditions of confinement, and total disregard of a federal court order instructing BOP to do exactly that, amounts to the height of "deliberate indifference"—a blatant Eighth Amendment violation. Under these circumstances, this Court may use habeas corpus to modify the terms of Ms. Cook's confinement to "remove the restraints making the custody illegal." *See Preiser*, 411 U.S. at 499 (1973). Ms. Cook thus respectfully requests that the Court enforce its existing order, or grant Ms. Cook's immediate release, with home confinement as a condition of her supervised release.

**II.   The Court Has Authority Under 18 U.S.C. § 3582(c) to Release Ms. Cook from VOA.**

Under 18 U.S.C. § 3582, as modified by the First Step Act, the Court may modify a term of imprisonment upon motion by the BOP. But Section 3582(c)(1)(A) of Title 18 also permits a defendant to move the Court for a reduction of his or her sentence directly, for extraordinary and compelling reasons, if: (1) the defendant has fully exhausted his or her administrative remedies; or (2) there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i). Here, while Ms. Cook has requested compassionate release from the BOP pursuant to Section 3582(c)(1)(A), an exception to the exhaustion requirement is warranted due to the extraordinary circumstances presented by COVID-19. As noted in *Hendricks v. Zenon*, this Court can dispense with the administrative exhaustion requirement where there are "exceptional circumstances of peculiar urgency . . . ." 993 F.2d 664,

4

672 (9th Cir. 1993) (quoting *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *see also* 28 U.S.C. § 2254(b) (authorizing application for writ of habeas corpus in the absence of exhaustion of State remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."). As *Hendricks* anticipates, Ms. Cook has presented "exceptional" circumstances of peculiar urgency. BOP's actions in Ms. Cook's case—including its refusal to enforce this Court's Order—demonstrates the futility of waiting to exhaust BOP's administrative remedies. *See United States v. Strickland*, No. 7:98–CR–82–5–F(l), 2004 WL 3414644, at *1 (E.D.N.C. Aug. 9, 2004), aff'd, 126 F. App'x 116, 117 (4th Cir. 2005) ("Plaintiff must exhaust BOP administrative remedies *unless* he can establish futility.") (emphasis added). BOP and the USAO have made clear that they do not intend to transfer Ms. Cook to home confinement before her BOP-calculated eligibility date for home confinement. *See* Mot. at 5. And they have not suggested any other way to cure the threat to Ms. Cook's health and safety. Moreover, waiting for the statutory 30-day waiting period to lapse could cause irreparable harm to Ms. Cook given the rapid spread of COVID-19 and the VOA's continued failure to adequately curtail the spread at its facility. *Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010) (citing *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3rd Cir.1988)) ("Exhaustion of administrative remedies may not be required where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.").

The extraordinary circumstances and compelling reasons to warrant a modification of sentence for Ms. Cook have not been disputed by the government. As outlined in Ms. Cook's motions (ECF Nos. 1726 and 1731) and her supplemental letter (ECF No. 1733), VOA, a BOP contractor, has failed to protect its residents from the risks of contracting COVID-19. Upon

information and belief, at least one resident has presented with symptoms consistent with COVID-19 including an upper respiratory infection and fever. Without an effective way to isolate herself in the shared living environment at VOA, and without clear action by VOA, Ms. Cook's health and safety is compromised in violation of the Eighth Amendment. BOP, through VOA, has not satisfied its statutory mandate to protect and safeguard the individuals under its jurisdiction. The extraordinary circumstances—driven by a pandemic—could not have been foreseen by the Court at sentencing. *See* BOP, Program Statement: Compassionate Release/Reduction in Sentence, Jan. 17, 2019, https://tinyurl.com/v76dyme ("The Bureau uses 18 U.S.C. 4205(g) and 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."). Moreover, Ms. Cook is an ideal candidate for sentence modification as she has been a model inmate, has less than four months left to serve on her sentence, is eligible for home confinement in less than a month, and has a supportive home environment to return to. Accordingly, consistent with its existing Order, the Court has the authority to effectuate Ms. Cook's release by modifying her sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i), and ordering supervised release, with a period of home confinement, as needed. *See, e.g.*, *United States v. Agustin Francisco Huneeus*, 19-CR-10117-IT-7, ECF No. 642 (D. Mass., Mar. 17, 2020) (granting emergency motion to modify sentence to time served with home confinement for the first two weeks of supervised release "pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and in light of the national state of emergency due to the global COVID-19 pandemic and Huneeus' unique health circumstances").

      **III.    The Court Has Authority Under 28 U.S.C. §1651 to Release Ms. Cook from VOA.**

Even if the legal authorities detailed above were unavailable to the Court, it nonetheless can release Ms. Cook by issuing a writ of error coram nobis reducing her sentence to time served.

The Court may construe Ms. Cook's motion as a petition for writ of error coram nobis. *See U.S. v. Marshall*, 2014 WL 1123380, at *1 (W.D. Va. Mar. 21, 2014) (construing inmate's "motion to reduce" as a petition for writ of error coram nobis). "A writ of error coram nobis is an extraordinary remedy, not to be granted unless an error of the most fundamental character has occurred and no other remedy would apply to correct the error." *Id.* at *9 (quotations omitted). Courts may grant such a petition to reduce an inmate's sentence. *Id.* at *10 (granting inmate's request for a reduced sentence and ordering that he be released).

As Ms. Cook has explained repeatedly—*see* ECF Nos. 1726, 1731, 1733—there is an extraordinary crisis at VOA. The dangerous and deteriorating conditions at VOA, where multiple residents have been transported to the hospital and one resident was ordered to self-quarantine despite the impossibility of doing so in the VOA facility, threaten Ms. Cook's, and other residents, health and possibly life. Keeping Ms. Cook confined at VOA would be "an error of the most fundamental character." *See Marshall*, 2014 WL 1123380, at *9. Indeed, given the BOP's duty to protect the safety of all inmates, "[f]ew errors could be classified as more fundamental in our criminal justice system" than unreasonably, continuously, and consciously exposing those inmates to the imminent risk of illness and death. *See id.* at *10. "[A] writ of error coram nobis is appropriate in this extraordinary and extremely unusual situation." *Id.* Ms. Cook's situation is extraordinary and extremely unusual, which allows the Court to exercise its authority to grant Ms. Cook relief.

**IV.     The Pending Stimulus Bill Further Undermines the Government's Position.**

The government's argument is further undermined by provisions in the stimulus bill that were passed Wednesday by the U.S. Senate and that could be signed into law as early as this week. Recognizing the seriousness of the COVID-19 pandemic and the particular risk it poses to those

in the custody of the BOP, the Senate's bill gives the Attorney General and BOP the ability to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code." H.R. 748, 116th Cong. § 12003(b)(2) (as passed by Senate, Mar. 26, 2020). Therefore, even if the Court were to agree with the government's argument, which is based in part on 18 U.S.C. § 3624, the argument quickly could become outdated and yet Ms. Cook will have been exposed to the unreasonable risk of COVID-19 exposure for days or weeks more. But there is also no reason to defer to BOP at this time given the existing chaos in the country and the likely, overwhelming requests for release pending before BOP. Given all the independent and legitimate bases on which the Court can and should grant Ms. Cook's release from the VOA, there is no reason to risk her life for purposes of honoring a (hopefully) soon-to-be-defunct practice of opposing release to home confinement for residents currently living in dangerous halfway houses like the VOA. Ms. Cook requests that the Court act now.

## CONCLUSION

For the reasons set forth above, the Government's Motion to Reconsider the Court's Order Granting Defendant's Emergency Motion for Immediate Transfer To Home Confinement should be denied. Ms. Cook respectfully requests that the Court grant the relief requested in her second emergency motion, ECF No. 1731, and/or any other relief that the Court deems equitable.

Respectfully submitted,

Dated: March 27, 2020                      */s/ Brian L. Stekloff*
                                           Brian L. Stekloff
                                           Aleshadye Getachew
                                           Hayter L. Whitman

                                           WILKINSON WALSH LLP
                                           2001 M Street NW, 10th Floor
                                           Washington, DC 20036
                                           (202) 841-4000